# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | |
| v. | ) | Criminal No.: 2:09-992-PMD |
| | ) | |
| Richard Narrl | ) | **ORDER** |
| a/k/a Noel H. Richard, | ) | |
| a/k/a Richard Earl, | ) | |
| a/k/a Narrl Richard | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This matter is before the court upon Defendant Narrl Richard's ("Defendant") motion to reconsider the motion to suppress a quantity of heroin seized by the City of North Charleston Police Department, to set aside the jury verdict of guilty, and for a new trial. Defendant is charged in a one count indictment for knowingly, intentionally, and unlawfully possessing with intent to distribute a quantity of heroin, a Schedule I controlled substance; In violation of Title 21 United States Code sections 841(a)(1) and 841(b)(1)(c).

## PROCEDURAL HISTORY

Defendant was indicted on September 8, 2009 for knowingly, intentionally, and unlawfully possessing with intent to distribute a quantity of heroin, in violation of 21 U.S.C. sections 841(a)(1) and (b)(1)(C). Defendant filed a motion to suppress on February 1, 2010. In that motion to suppress, Defendant argued that the traffic stop and subsequent search of the vehicle was in violation of his Fourth Amendment rights. After a hearing on the motion to suppress, the court denied the motion.

Subsequently, Defendant filed a petition under 28 U.S.C. § 2241 asserting that he should be released from custody prior to trial. In his petition, he argued that the vehicle search was

invalid and all evidence recovered should be suppressed, that the search warrant obtained by police for his residence was invalid due to lack of probable cause, that the search warrant was otherwise defective; and that the government had not obtained a court order necessary for electronic surveillance. The court dismissed his petition on March 7, 2011 because this criminal case was still pending and "[i]t is well settled that in the absence of exceptional circumstances in criminal cases the regular judicial procedure should be followed and habeas corpus should not be granted in advance of trial." *Jones v. Perkins*, 245 U.S. 390, 391-92 (1918).

Defendant, by and through his new counsel, filed a subsequent motion to suppress challenging the use of a GPS tracking device. In denying Defendant's motion to suppress, the court noted that the D.C. Court of Appeals in *United States v. Maynard*, 615 F.3d 544 (D.C. Cir. 2010), *cert denied* 131 S.Ct. 671 (2010) ruled that a search occurs when law enforcement engage in prolonged tracking of a vehicle using a GPS tracking device. However, at that time, the Supreme Court had not yet considered whether GPS monitoring of a vehicle's location constitutes a Fourth Amendment search, and "the great weight of the law from other federal circuits reject[ed] [the D.C. Circuit's] view." Order 8 (quoting *United States v. Walker*, 2011 WL 651414 (W.D. Mich. February 11, 2011) (citation omitted).

Since the Court's ruling on Defendant's motion, the United States Supreme Court has addressed the issue and held that attaching a GPS tracking device to a vehicle is a search within the meaning of the Fourth Amendment. *See United States v. Jones*, 132 S.Ct. 945, 949 (2012) ("We hold that the Government's installation of a GPS device on a target's vehicle, and its use of that device to monitor the vehicle's movements, constitutes a 'search.'"). In light of *Jones*, Defendant asks the Court to reconsider its pre-*Jones* decision on his motion to suppress, to set aside the jury verdict of guilty, and for a new trial.

**FACTUAL BACKGROUND**

In the spring of 2009, the narcotics unit for the North Charleston Police Department received information that Defendant was involved in the distribution of heroin. As a result, they began to do surveillance at 7898 Dove Creek Road, Apartment # 106 in North Charleston. During the surveillance, the officers observed Defendant come in and out of the apartment and get into a white 2004 Pontiac Grand Prix, bearing a Florida license tag numbered 765-IGF and registered to a Darlen Saget. Then, on May 6, 2009, Detective Jason Roy placed a GPS tracking device underneath the rear bumper of the Pontiac, while the vehicle was parked in a public place. Detective Roy monitored the movement of the vehicle via a laptop, and from May 6 to May 30, 2009, the car hardly moved.

Then, on May 31, 2009, at approximately 9:00 a.m., Detective Roy noticed the Pontiac was traveling through Virginia, and a review of the vehicle's travel history indicated that it had left North Charleston at approximately 1:33 a.m. and had stopped several times for a few minutes at areas next to the interstate. He continued to monitor the vehicle's movement, and eventually, it arrived in Newark, New Jersey at approximately 2:30 p.m. Then approximately 1 hour and 20 minutes later, at 3:49 p.m., the vehicle departed New Jersey travelling on I-95 south. It travelled through Delaware, Maryland, Virginia, North Carolina, and then back into South Carolina. Again, the vehicle only stopped several times for a few minutes at locations near the interstate. The vehicle entered South Carolina on I-95 at approximately 2:30 a.m. on June 1, and it merged onto I-26 towards Charleston at 4:30 a.m.

Based on the travel route of the vehicle, officers set up surveillance along I-26, and as the Pontiac approached the Ashley Phosphate Road exit, the vehicle moved into the exit lane without signaling. Detective Dan Bailey and Detective Matt Hughes then initiated a traffic stop on the

exit ramp. Detective Bailey approached the passenger side of the vehicle and observed the passenger, later to be identified as the Defendant, to be very nervous. He was sweating and his arms and legs were shaking. Detective Bailey asked Defendant if he was okay and Defendant indicated that he was alright. When Defendant was asked for identification and his name, Defendant allegedly turned to the officer, opened his mouth and acted as if he were speaking, but nothing came out. Finally, Detective Bailey asked Defendant for his date of birth and how old he was, and the Defendant responded that he was 27 years old and was born in 1976. Based upon the information about the vehicle's route of travel, Defendant's nervous behavior, and the incorrect information he provided about his age and birth year, the officers asked Defendant to step out of the vehicle. The driver of the vehicle, Katia Coney, was also asked to step out of the vehicle.

While out of the vehicle, Defendant told the officers that he and his girlfriend were returning from a weekend trip to New Jersey and that they had been there for two days. Ms. Coney, however, told the officers that they had only stayed in New Jersey for about an hour, which was consistent with the movement of the vehicle traced by the GPS device. Also while both occupants were out of the vehicle, Canine Officer Anthony Daniele, who was already at the scene, deployed his canine dog to conduct a perimeter sniff of the vehicle for the odor of illegal narcotics. The drug dog positively alerted to the exterior driver's side door, the center console, and to the rear passenger floorboards.

By this time, Detective Daniel Prichard arrived at the scene, and he was advised of the drug dog's positive alert on the vehicle, as well as the conflicting stories given by Ms. Coney and Defendant. Detective Prichard then searched the passenger compartment of the vehicle, and he observed that the passenger's side rocker panel was loose. As a result, he pulled it out, reached

under the carpet and padding, and removed five glassine bags with a light brown powder held together with rubber bands. The substance field-tested positive for heroin, and Defendant and Ms. Coney were arrested for possession with the intent to distribute heroin and for possession with intent to distribute heroin within ½ mile of a school or park.

The officers then obtained a search warrant to search the vehicle, and during the search, the officers found a false compartment under the center console, which was operated by a hydraulic piston. In the center console, the officers found a Haitian passport, which was issued in the name of Narrl Joseph Richard and had Defendant's picture on it, a plastic bag containing 1,000 glassine bags containing a light brown powder, which field-tested positive for heroin, as well as other items. The officers then obtained and executed a search warrant at Apartment # 106 located at 7898 Dove Creek Road in North Charleston, and inside one of the bedrooms, the officers found documents bearing the name of Narrl Richard and Darlen Saget.

## ANALYSIS

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. Amend. IV.  In *Jones*, the Court determined that attaching a GPS tracking device to an individual's vehicle was a search. *Jones*, 132 S. Ct. at 949 ("We hold that the Government's installation of a GPS device on a target's vehicle, and its use of that device to monitor the vehicle's movements, constitutes a 'search.'").  Generally, unless an exception applies, law enforcement officials must obtain a warrant before conducting a search.

I.    **Exceptions to the warrant requirement:**

The Government contends that, although attaching the GPS to Defendant's vehicle was a search, the search did not violate Defendant's Fourth Amendment rights because an exception to the warrant requirement applies. First, the Government argues that a warrant was not required because the search was supported by reasonable suspicion. Second, the Government argues that a warrant was not required because the search was supported by probable cause.

a. **Reasonable Suspicion is insufficient to justify the warrantless use of a GPS tracking device.**

A well established exception to the warrant requirement allows law enforcement to perform a patdown without a warrant when the search is supported by reasonable suspicion. *See Terry v. Ohio*, 392 U.S. 1, 30 (1968) (holding that the police could stop and patdown a person if they had reasonable suspicion that criminal activity was afoot). The Government asserts that the Supreme Court has identified various law enforcement actions that qualify as Fourth Amendment searches or seizures, but that may nevertheless be conducted without a warrant or probable cause. Gov. Res. to Def.'s Mot., 8. (citing *Samson v. California*, 547 U.S. 843, 847 (2006) (individualized suspicion not required for search of parolee's home or person); *United States v. Flores-Montano*, 541 U.S. 149, 155 (2004) (no reasonable suspicion required to remove, disassemble, and reassemble a vehicle's fuel tank during a broader search); *United States v. Knights*, 534 U.S. 112, 118-21 (2001) (upholding search of probationer's home based on reasonable suspicion); *Vernonia School Dist. 47J v. Acton*, 515 U.S. 646, 654-66 (1995) (random, suspicionless urinalysis drug testing of student-athletes permissible); *Maryland v. Buie*, 494 U.S. 325, 334 (1990) (properly limited protective sweep in conjunction with in-home arrest can be conducted when searching officer possesses reasonable belief based on specific and

6

articulable facts that area to be swept harbors individual posing danger to those on arrest scene); *New Jersey v. T.L.O.*, 469 U.S. 325, 341-42 (1985) (upholding search of public school student based on reasonable suspicion); *United States v. Place*, 462 U.S. 696, 706 (1983) (upholding seizure of traveler's luggage on reasonable suspicion that it contains narcotics); *United States v. Martinez-Fuerte*, 428 U.S. 543, 554-55 (1976) (upholding suspicionless vehicle stops at fixed border patrol checkpoints)).

These cases are all distinguishable and the underlying principles in those cases do not support an exception to the warrant and probable cause requirements in this case. The Government has failed to articulate why such an exception would be appropriate or necessary. Therefore, even assuming law enforcement had reasonable suspicion, no exception to the warrant requirement applied to the search.

### b. Probable cause is insufficient to justify the warrantless use of a GPS tracking device.

The Government argues that an individual's reduced expectation of privacy in an automobile, and the automobile's mobility justify an exception to the warrant requirement when police have probable cause to attach a GPS tracking device to an individual's vehicle. The Government cites *New York v. Class*, 475 U.S. 106, 117-19 (1986) in support of its claim that an individual has a reduced expectation of privacy in his automobile. Additionally, the Government relies on the rational supporting the "automobile exception."

In *Class*, the Court held that during a traffic stop, a police officer may reach into the passenger compartment of a vehicle to move paper obscuring the Vehicle Identification Number (VIN), because there is no reasonable expectation of privacy in the VIN. *Id.* at 114 ("because of the important role played by the VIN in the pervasive governmental regulation of the automobile and the efforts by the federal government to ensure that the VIN is placed in plain view, we hold

7

that there was no reasonable expectation of privacy in the VIN"). The Court also held that the gun discovered by the officer in the interior of the car while checking the VIN should not be suppressed. *Id.* at 115-19. (reasoning that the officer acted within the bounds of the Fourth Amendment in conducting the search for the VIN, saw the gun during that search, and could not have returned the individual to the vehicle knowing the gun was exposed without jeopardizing the officer's own safety). That case and its reasoning are inapposite. Additionally, as the Government admits, the "automobile exception" does not apply to the installation and use of a GPS tracking device. Therefore, neither an individual's reduced expectation of privacy in his vehicle, nor the reasoning supporting the automobile exception, justify creating an exception to the warrant requirement.

If the officers had probable cause to attach the GPS tracking device to Defendant's car, they should have gotten a warrant. S*ee* S.C. Code Ann. §17-30-140 (providing that "[t]he Attorney General or any solicitor may make application to a judge of competent jurisdiction for an order authorizing or approving the installation and use of a mobile tracking device . . . ."). No concern for officer safety, exigent circumstances, or other rationale supports the Government's position that probable cause is sufficient, without a warrant, to attach a GPS tracking device to an individual's vehicle.

### II.     Exceptions to the exclusionary rule:

#### a.  The good faith exception to the exclusionary rule does not apply.

In *Davis v. United States*, 131 S.Ct. 2419 (2011), the Court held that the good faith exception to the exclusionary rule applies when officers rely on binding appellate precedent that is later overruled. In that case, officers relied on binding Eleventh Circuit precedent interpreting *New York v. Belton*, 453 U.S. 454 (1981) in conducting a search of an automobile incident to

8

arrest. *See id.* 131 S.Ct. at 2426 ("Like most courts, the Eleventh Circuit had long read *Belton* to establish a bright-line rule authorizing substantially contemporaneous vehicle searches incident to arrest of recent occupants." (citing *United States v. Gonzalez*, 71 F.3d 819, 822, 824-27 (11th Cir. 1996) (upholding automobile search conducted after the defendant had been "'pulled from the vehicle, handcuffed, laid on the ground, and placed under arrest'"))). Subsequently, the Supreme Court ruled that the Eleventh Circuit, and others, were interpreting *Belton* wrongly. *See Arizona v. Gant,* 556 U.S. 332, 343 (2009) (establishing that an automobile search incident to a recent occupant's arrest is constitutional if the arrestee is within reaching distance of the vehicle during the search, or if the police have reason to believe that the vehicle contains "evidence relevant to the crime of arrest"). Given the Court's decision in *Gant*, the search in *Davis* violated the defendant's Fourth Amendment rights. However, the Court held that the evidence should not be suppressed because "when the police conduct a search on objectively reasonable reliance on binding appellate precedent, the exclusionary rule does not apply." *Davis*, 131 S.Ct. at 2434.

In this case, law enforcement did not rely on any binding appellate precedent. While several circuit courts had ruled on the issue, the Fourth Circuit Court of Appeals did not have occasion to determine whether attaching a GPS tracking device to an individual's vehicle was a search. Therefore, the good faith exception to the exclusionary rule does not apply in this case because the officers did not rely on binding Fourth Circuit precedent that was later reversed. *See United States v. Wilks*, 647 F.3d 520, 521, 524 (4th Cir. 2011) (holding that the case was "on all fours" with *Davis* when the police officer conducted the "search in objectively reasonable reliance on binding appellate (in our case, Fourth Circuit) precedent that is later overruled").

### b. When evidence is uncovered subsequent to a new, distinct crime an exception to the exclusionary rule applies.

In *United States v. Sprinkle*, 106 F.3d 613, 618 (4th Cir. 1997), the Fourth Circuit held that even when officers violate an individual's Fourth Amendment rights, evidence uncovered subsequent to a new, distinct crime should not be excluded. In *Sprinkle* officers attempted to patdown an individual without reasonable suspicion. When officers began the patdown, the defendant "pushed away and began to run." *Id.* at 616. While on the run he pulled out a firearm and fired shots. *Id.* After officers caught him, he was arrested and charged with possession of a firearm by a convicted felon. *Id.* The court held that although the pat-down was illegal, when "a suspect's response to an illegal stop 'is itself a new, distinct crime, then the police constitutionally may arrest the [suspect] for that crime.'" *Id.* at 619 (quoting *United States v. Bailey*, 691 F.2d 1009, 1017 (11th Cir.1982)). The Court stated its reasoning as follows:

> When [the defendant] drew and fired his gun at the officer, he committed a new crime that was distinct from any crime he might have been suspected of at the time of the initial stop. At this point, [the officer] had probable cause to arrest [the defendant] because the new crime purged the taint of the prior illegal stop. And the gun, which was in plain view at the scene of the new crime, could be legitimately seized.

*Id.* at 619-20 (internal citation omitted). When an individual commits a "new crime" he can be prosecuted for that crime or crimes related to evidence legally discovered after the crime:

> When Sprinkle drew and fired his gun at the officer, he committed a new crime that was distinct from any crime he might have been suspected of at the time of the initial stop. *See* S.C.Code Ann. § 16–23–410 (Law.Co-op.Supp.1995) ("It is unlawful for a person to present or point at another person a loaded or unloaded firearm."). At this point, [the officer] had probable cause to arrest Sprinkle because the new crime purged the taint of the prior illegal stop. And the gun, which was in plain view at the scene of the new crime, could be legitimately seized.

*Id.*

In *Sprinkle*, the new crime—drawing and firing a gun at the officer—was more egregious than the new crime in this case—Katia Coney's failure to properly use her turn signal. However, the difference in severity of the new crime does not change the result. Failure to properly use a turn signal is a violation of state law that permits law enforcement to make a traffic stop. S*ee e.g., United States v. Hassan El*, 5 F.3d 726, 729 (4th Cir. 1993) (moving traffic violations provide a sufficient basis to initiate a traffic stop, regardless of the subjective reasons the officer may have had to make the stop). Therefore, the legal traffic stop based on probable cause that a new, distinct crime occurred—the failure to use the turn signal—purged the taint of the illegal use of the GPS and the exception to the exclusionary rule should apply.

Additionally, the policy supporting the decision in *Sprinkle* applies to these facts. In *Sprinkle* the court stated that "[t]here is a strong policy reason for holding that a new and distinct crime, even if triggered by an illegal stop, is a sufficient intervening event to provide independent grounds for arrest . . .'[a] contrary rule would virtually immunize a defendant from prosecution for all crimes he might commit that have a sufficient causal connection to the police misconduct.'" *Sprinkle*, 106 F.3d at 619 (quoting *United States v. Bailey*, 691 F.2d 1009, 1018 (11th Cir. 1982)).

Therefore, based on the holding and policy concern in *Sprinkle*, the Court holds that the evidence uncovered subsequent to the new crime falls under the exception to the exclusionary rule.

## CONCLUSION

Based on the foregoing reasons, the Court **GRANTS in part** and **DENIES in part** Defendant's motion to suppress. All of the evidence relating to Defendant's travelling to New

Jersey and other evidence gathered using the GPS tracking device is hereby excluded, but the evidence uncovered subsequent to the legal traffic stop is not suppressed because the new crime purged the taint of the illegal GPS search.

Having determined that evidence that was presented to the jury in this case must now be excluded, the court **GRANTS** Defendant's motion to set aside the jury verdict of guilty and for a new trial.

**AND IT IS SO ORDERED.**

PATRICK MICHAEL DUFFY
United States District Judge

**April 12, 2012**
**Charleston, SC**